Ronald G. VAN BRUNT, Pro Ami, Appellant,

v.

Waldemer W. MEYER, Respondent.

No. 24758.

Kansas City Court of Appeals.

Missouri.

Dec. 4, 1967.

Galen Knowlton, Michael J. Drape, Knowlton & Drape, Kansas City, for appellant.

A. Warren Francis, Lloyd A. Hamrick, Roger J. Staab, Kansas City, for respondent.

CHARLES SHANGLER, Special Judge.

Plaintiff, Ronald Van Brunt, 13 years of age at the time of the alleged occurrence, brought suit for damages against defendant Waldemer W. Meyer for personal injuries allegedly suffered by plaintiff consequent upon a collision between the bicycle which plaintiff was operating and defendant's 1957 Cadillac. Defendant had judgment upon the trial; plaintiff's motion for new trial having been overruled, he brings this appeal.

Somewhat before 8:00 A.M., September 18, 1963, a cool, pleasant and dry day, the minor plaintiff was operating his bicycle, north on Ward Parkway Plaza. The bicycle was equipped with raised handle bars and foot-operated coaster brakes, but had no horn or rear vision mirror. Ronald was then a student, enrolled in the 8th grade of Bingham Junior High School. On that morning, as was his custom, he was bound for the home of Charles Schliebs, his schoolmate who lived at 8210 Ward Parkway Plaza. From there, they customarily rode to school together.

Ward Parkway Plaza is a two-lane, north-south street in Kansas City, Missouri, one lane each for use of north and southbound traffic. It is 19 feet wide and the east and west edges are raised or "lipped" so that no shoulder exists on either side, and slopes gently to the north. The Schliebs' residence is located on the west side of the street and is separated from it by a lawn. Its doorway is located on the south end, facing east. As best as we are able to determine, about 12 feet north from this doorway is located the driveway into the home, into which plaintiff customarily turned.

The collision occurred when the plaintiff turned from the east or northbound lane into the west or southbound lane of Ward Parkway Plaza while the defendant's car occupying the southbound lane was in the process of passing plaintiff. Although there appears, by the record, to have been abundant opportunity to have established the place and point of impact with some definiteness, we are required to speculate concerning it. The collision appears to have occurred in the west or southbound lane. Plaintiff, particularly, made repeated use of his Exhibits 1 and 2, photographs of the scene taken by Corporal Ralph Anthony. The reported colloquy, however, is more pantomimic than verbally articulated, consisting of gestures rather than precise meanings. We shall have cause to refer to this again in the course of this opinion.

At the trial, plaintiff had no recollection of the accident or of the conditions that existed that day. He did not even recall riding the bicycle that day; his first recollection after the accident was that of lying on a chaise longue on the Schliebs' porch. There was evidence he had suffered a head injury resulting in loss of memory. The front axle, front fork and saddlebags of the bicycle were bent by the collision. The damage to defendant's Cadillac was to the side of the right front fender, near its front. Charles Schliebs, plaintiff's witness and schoolmate, testified as follows: He was standing on the lawn of his home, 15–20 feet west of the street, waiting for plaintiff's arrival. He looked up the street, south, and saw plaintiff coming on his bicycle, 8 or 10 houses away; as Ronald came down the slope in the northbound lane, he "came down at a fairly good speed for a bicycle and slowed down as he normally did." Charles' mother called to him, he turned in towards the house to get his books, and as he did so he heard a screech of tires, turned around and plaintiff was in the air, and defendant's car skidded to a halt. He did not witness the actual impact.

Elsie Schliebs, mother of Charles, testified for the plaintiff as follows: She was standing in her doorway when the accident occurred. She first saw plaintiff when he was even with her door, 9–12 feet from her driveway to the north; he was then in the northbound lane of the street. She turned around to call her son, heard a squealing noise, and saw the front end of the right side of defendant's car strike plaintiff just

"as he turned in the driveway". The impact occurred in the west lane. She didn't know the speed of defendant's car but "he wasn't going slow". She did not recall a horn being sounded before the accident.

Corporal Ralph Anthony, Kansas City, Missouri Police Department, investigated the accident and took two photographs, received in evidence as plaintiff's Exhibits 1 and 2. He found 84 feet of over-all skidmarks from the end of defendant's Cadillac, all in the west half of the street, angling to the left and running two feet east of the west curbline. The left side of the Cadillac was over the curb on some gravel. There was no physical evidence which indicated to him where the point of impact was. The speed limit in that area was 30 M.P.H. Plaintiff could tell him nothing concerning the accident. Defendant told him that he was northbound on Ward Parkway Plaza, the bicycle, without warning moved to the left side of the roadway as defendant was passing it. Defendant was 10–12 feet away when he first noticed the danger of an accident, his speed then was 30 M.P.H.

Corporal Robert Livingston was offered by plaintiff as an expert on stopping distances and speeds. Under the facts hypothesized, he testified that 84 feet of skidmarks indicated a speed of 36½ M.P.H. Under the conditions, "at the minimum", 83.06 feet would be required to stop at a speed of 30 M.P.H. Also, he testified that the normal reaction time is ¾ths of a second and that during that time, at 30 M.P.H. a car travels 33 feet; at 20 M.P.H. a car travels 22 feet; at 25 M.P.H. a car travels 27 feet and at 10 M.P.H., a car travels 11 feet. There was no testimony elicited as to stopping distances, under the conditions prevailing, for any speed under 30 M.P.H.

The defendant Waldemer W. Meyer testified that he was on the way to work and was alone in his car. He was northbound on Ward Parkway Plaza; driving his 1957 Cadillac which was 6–7 feet wide. Within a block or two of the accident, a small foreign car was in front of him, northbound. It was 3 to 5 car lengths in front of him when it passed a boy on a bicycle. Defendant's speed then was 25–30 M.P.H. He then "closed the gap" and started to pass the boy when he was 36–40 feet away (one estimate) or 50–60 feet away (another estimate). He had first seen plaintiff when he was 150 feet from him, but did not recall how far it was then from place of impact. When defendant started to pass, plaintiff was "in the right lane a couple of feet from the righthand side of the road". As he started to pass the boy, he honked his horn, was almost even with him, the boy made an abrupt left turn "without looking back and without signaling and ran right into the righthand side of my car." He also testified, "When he made his abrupt turn, I hit my horn and my brakes at the same time", creating a doubt as to whether he sounded his horn twice, i.e., when he started to pass and when the boy made the turn, or only once. The jury could have concluded the defendant meant he sounded his horn only once, at the time of the application of the brakes. The plaintiff was 12–15 feet from him when he applied his brakes; the wheels locked immediately, and the car angled toward the left curb, sliding as it did. From other evidence in the record, however, it could be inferred that defendant was approximately 84 feet away from the point of impact prior to the application of the brakes.

We infer from all of the evidence, that the impact occurred in the west or southbound lane. Defendant testified his car traveled about 40 feet after impact, which involved the side of the right front fender. The speed of the car at impact was 25–26 M.P.H. Defendant could not judge the speed of the bicycle "but I would say he was going a good speed for a bicycle."

The defendant's other liability witness was Bernard J. Fremerman, the driver of the foreign car (a Triumph). He had passed the boy on the bicycle and after having passed, he heard the honking of a horn, looked in the rear-view mirror and "saw this boy pull into the side of the car". He

doesn't recall whether the horn drew his attention to the boy or the fact that he had almost struck the boy himself when passing him. His testimony thereafter was inconclusive. At the time of the accident, the car "was about the middle of the street * * he was pulling away from the righthand curb * * * to go around the boy." When pressed, on cross-examination, for a more precise positioning of the car at the time of collision, he answered: "I couldn't say exactly the number of feet; whether exactly center, or right of center, or left of center." He placed the collision in the northbound lane, "pretty close to the middle of the street." He had no judgment of the speed of either the bicycle or the car at any time he observed them.

The legal questions presented for our determination on this appeal are as follows:

1. The plaintiff contends, the trial court erred in submitting to the jury defendant's Instruction No. 4, defendant's contributory negligence submissions because it required plaintiff bicycle operator to exercise the highest degree of care, a higher standard than the law requires.

2. Defendant urges, plaintiff did not properly preserve that point for appellate review because he did not allege any error in the giving of Instruction No. 5 which defined the terms "negligence" and "highest degree of care".

3. Also, that if plaintiff believed Instruction No. 4 was erroneous, he was under a duty to at least offer for the trial court's consideration an instruction submitting his theory of the proper degree of care; and

4. Instruction No. 4 was proper because the Traffic Code of Kansas City, Missouri validly requires a bicycle rider to exercise the highest degree of care in its operation, and

5. Even assuming Instruction No. 4 was erroneous, the judgment of the trial court should be affirmed because plaintiff did not make a submissible issue as to lookout or excessive speed as submitted in plaintiff's Instruction No. 2, and, lastly,

6. The evidence conclusively establishes that plaintiff was guilty of contributory negligence as a matter of law.

We consider plaintiff's assignment of error and each of defendant's countervailing arguments, *seriatim*.

■ Plaintiff contends that the trial court erred in submitting to the jury defendant's Instruction No. 4, which reads:

"Your verdict must be for the defendant if you believe:

First, plaintiff either: failed to keep a careful lookout, or failed to signal his intention to turn, or plaintiff knew or by the use of the *highest degree of care* could have known that there was a reasonable likelihood of collision in time thereafter to have slackened his speed and swerved but plaintiff failed to do so; and

Second, plaintiff's conduct, in any one or more of the respects submitted in Paragraph First, was negligent, and

Third, such negligence of plaintiff directly caused or directly contributed to cause any damage he may have sustained." (Emphasis ours.)

Section 304.010, R.S.Mo., 1959, requires "Every person operating a motor vehicle on the highways of this state" to "exercise the highest degree of care". Plaintiff Ronald Van Brunt, of course, was operating a bicycle and not a motor vehicle. In Taylor v. Sesler, Mo.App., 113 S.W.2d 812, a case involving a collision between a taxicab and a bicycle, the court declared the standard of care required by the operators of each, at page 815:

"Under the law, the defendant Cook, driver of the taxicab in question, was required

to use the highest degree of care in the operation thereof. The plaintiff (operator of the bicycle) was required to exercise ordinary care for his own safety * * *" (Parenthetical comment added).

This is a correct statement of the law. See, also, Ward v. Goodwin, Mo.Sup., 345 S.W. 2d 215. The defendant does not really dispute the impropriety of having given this Instruction No. 4, but argues that plaintiff was under a duty to "at least offer for the trial court's consideration an instruction submitting his theory of the proper degree of care." He offers numerous authorities as supportive of that contention.

■ We have read those authorities and conclude they simply do not apply to our situation. We do not cavil at the holding in Kungle v. Austin, Mo.Sup., 380 S.W. 2d 354, cited by defendant. There the court stated at page 360:

"Plaintiffs, if dissatisfied with the defendants' instructions because of the lack of definition of 'ordinary care' * * *, had the right to offer an instruction on the subject * * *. Having failed to offer such an instruction, the appellants cannot now claim error on the part of the trial court."

Such failure on the part of the trial court to give a defining instruction, it was there held, was nondirection rather than misdirection. In our case, however, Instruction No. 4 was a misdirection, improperly stated the law as to the *standard* of care imposed on plaintiff and no *definition* of that standard could have rectified that error. On the other hand, had plaintiff offered an instruction defining ordinary care, which was the proper standard by which plaintiff's conduct was to be measured, it would have conflicted with the highest degree of care standard submitted by Instruction No. 4. The only manner by which matters could have been set aright was for plaintiff to have offered a contributory negligence instruction correctly stating the law as to the required

standard of care, and, under our system of jurisprudence, there is no duty upon a party to correct an erroneous and misleading instruction of his opponent. In this regard, in Zalle v. Underwood, Mo.Sup., 372 S.W.2d 98 at page 103, the court stated:

"While it is true that an adverse party will not be heard to complain in the absence of a request for a more specific instruction where an instruction is correct in its general scope and does not amount to misdirection, and is merely indefinite, 'it is not incumbent upon appellant to seek a more specific instruction, supplying the *deficiency* and correcting the *error* of plaintiff's main instruction in order to render an objection thereto available.' * * * There is no duty upon a party to correct an erroneous and misleading instruction of his opponent."

The giving of Instruction No. 4 was a misdirection and constitutes reversible error.

■ Defendant suggests that plaintiff did not properly preserve for appellate review his contention that Instruction No. 4 required a higher degree of care than required by law because he did not allege any error in Instruction No. 5 which defined the terms "negligent" and "highest degree of care." Defendant directs our attention to certain cases, among them Miller v. Gulf, Mobile & Ohio R. R. Co., Mo.Sup., 386 S. W.2d 97. It holds that specific objections not made at the trial of the case must be set forth in the motion for a new trial to preserve that error for review. We agree. Paragraph 7 of Plaintiff's Motion for New Trial specifically states as a ground for such Motion: "The instruction requires a higher degree of care than is necessary for a 13 year old bicycle rider". It sufficiently preserved that question for our review, V. A.M.R., Civil Rule 79.03. Defendant cites no authorities, and we know of none, which under these circumstances require a litigant to duplicate the preservation of the same point for review.

■ Defendant contends further that Instruction No. 4 was properly given, since

the plaintiff was under a duty to exercise the highest degree of care while operating his bicycle according to the Traffic Code of Kansas City, Missouri. Defendant read in evidence Section 58.1220:

> *"Traffic laws apply to persons riding bicycles.* Every person riding a bicycle upon a roadway shall be granted all of the rights and shall be subject to all the duties applicable to the driver of the vehicle by the provisions of this chapter, except as the special regulations in this article and except as to those provisions of this chapter which by their nature have no application."

Of course this court may not and does not take judicial notice of municipal ordinances. Peterson v. United Rys. Co. of St. Louis, 270 Mo. 67, 192 S.W. 938; City of Rolla v. Riden, Mo.App., 349 S.W.2d 255. The ordinance read into evidence imposes no explicit duty whatever on persons riding bicycles. It refers to other "provisions of this chapter", but they are not part of the record and we do not judicially note them. This point is ruled against defendant.

The defendant then urges that even if Instruction No. 4 is erroneous, judgment for defendant should be affirmed because plaintiff did not make out a submissible case as to lookout or excessive speed as submitted in plaintiff's Instruction No. 2.

■ Where, as in the case before us, the verdict and judgment were for the defendant and plaintiff appealed alleging trial errors, and defendant claimed that plaintiff failed to make a case for the jury, the reviewing court will view the evidence in a light most favorable to plaintiff, according him the benefit of all favorable inferences reasonably arising therefrom, and disregard that which is helpful to the defendant on the issues involved. McVicar v. W. R. Arthur & Company, Mo.Sup., 312 S.W.2d 805, 65 A.L.R.2d 785.

■ On the issue of excessive speed, although there was evidence that defendant was traveling 36½ M.P.H. immediately prior to the collision and that the speed limit was 30 M.P.H., plaintiff did not submit on a breach of the speed ordinance, but rather submitted on the common-law theory of excessive speed. This he was permitted to do. Brooks v. Mock, Mo.Sup., 330 S.W.2d 759; Glowacki v. Holste, Mo.Sup., 295 S.W.2d 135. Defendant argues that the mere fact defendant violated the speed ordinance is not a sufficient basis for an inference that such a violation was the proximate cause of plaintiff's injuries, citing Bauman v. Conrad, Mo.App., 342 S.W.2d 284. He also argues that there was no evidence that the collision would not have occurred if defendant had been operating his vehicle at a much slower speed—"even ten to fifteen miles per hour."

■ Of course, excessive speed cannot be the proximate cause unless it prevents a motorist from avoiding the accident, and hence it must be shown that the collision and resulting injuries would not have occurred except for the excessive speed shown by the evidence. Miller v. Fink, Mo.App., 387 S.W.2d 173. In the Bauman case cited by defendant, the court held that based on the evidence, as a matter of law, no proximate cause was demonstrated between the breach of the speed ordinance and the accident and injuries. The compass of that case, however, is very narrow, and is limited to that factual situation, as was observed by the Supreme Court in Watt v. St. Louis Public Service Company, Mo.Sup., 354 S.W.2d 889, at 891:

> "In the Bauman case, the only evidence as to violation of an ordinance, limiting speed to 30 miles per hour, was the testimony of the plaintiff therein who said she only saw the car 'about a second or two' before the collision and estimated its speed as 'about 35 miles per hour,' but also said the car 'was between one and two feet from the car in which she was riding when she first saw it'. The court pointed out there was no evidence as to the speed of the car in which she was rid-

ing or whether it had stopped at a stop sign * * * the width of the streets, [etc.]"

In Clark v. Dubbs, Mo.App., 360 S.W.2d 288, a case involving excessive speed, in commenting on both the Watt and Bauman cases, the court, at pages 292–293 distinguished them in terms of the period of time during which the speed violation continued, as a basis for considering whether the speed was the proximate cause of the accident and injury.

In our case, there was evidence that the street was 19 feet wide, that when defendant first saw plaintiff, the latter was 150 feet away; that he followed plaintiff and an intervening car and when that car had passed plaintiff, undertook to pass him himself. There was evidence that defendant was traveling 36½ M.P.H. immediately prior to application of brakes. The overall skidmarks were 84 feet; defendant traveled about 40 feet after impact. We do not fail to take into account that defendant was aware that plaintiff, a boy, was operating a bicycle in the same direction of travel as himself. We couple these facts and permissible inferences with the reaction time of ¾ths of a second and the testimony that at 30 M.P.H. a car travels approximately 33 feet during that reaction period. At defendant's speed of 36½ M.P.H., his car would have traveled just over 40 feet, during the reaction period. We must assume that defendant reacted immediately upon noticing the peril of collision, traveled about 40 feet until his brakes were applied and then traveled another 84 feet until his car came to a halt, or a total of 124 feet. Subtracting the 40 feet that defendant's car traveled after impact, it can be inferred that plaintiff was about 84 feet away when 'defendant became aware of the danger. We admit this recapitulation contains elements of uncertainty. There was no evidence reasonably establishing the speed of the bicycle at any given time or place or the juxtaposition of the car to the bicycle at any given time or place; nor was the place of impact definitely established. We have but defend-

ant's testimony that he was 10 to 12 feet from plaintiff when he applied his brakes. A reading of the record, however, convinces us that the testimony to fill many of these voids was available by the witnesses presented, but was not fully developed.

■ The question of submissibility on the issue of common-law excessive speed is admittedly a close one. Based upon all the evidence, however, we cannot say as a matter of law that plaintiff did not make a submissible case on that issue. The furtherance of justice requires that a case should not be reversed without remanding unless we are convinced that the facts are such that a recovery cannot be had. Reece v. Reed, Mo.Sup., 326 S.W.2d 67; Reed v. Burks, Mo.App., 393 S.W.2d 377. We are not so convinced.

Defendant next urges that the evidence establishes plaintiff to have been guilty of contributory negligence as a matter of law.

■ At the time of the occurrence, plaintiff was a 13 year old, eighth grade student enrolled at Bingham Junior High School. The record does not disclose any unusual intellectual acuity or other talent which would establish the plaintiff as anything other than a normally adequate 13 year old boy, or mark him as one of adult maturity. Whether a child is guilty of negligence or contributory negligence, of course, depends upon whether he has conformed to that standard of conduct to be expected of a child of similar age, experience and capacity, under the same or similar circumstances. M.A.I. 11.05; 65A C.J.S. Negligence § 146(1), page 182; Burger v. Missouri Pac.Ry.Co., 112 Mo. 238, 20 S.W. 439. The reason for this rule received its classic expression in the *Burger* case, at page 441:

"Common experience and observation teach us that due care on the part of an infant does not require the judgment and thoughtfulness that would be expected of an adult person under the same circumstances. In the conduct of a boy, we expect to find impulsiveness, indiscretion

and disregard of danger, and his capacity is measured accordingly. A boy may have all the knowledge of an adult respecting the dangers which will attend a particular act, but at the same time he may not have the prudence, thoughtfulness, and discretion to avoid them which are possessed by the ordinarily prudent adult person. Hence the rule is believed to be recognized in all the courts of the country that a child is not negligent if he exercise that degree of care which, under like circumstances, would reasonably be expected of one of his years and capacity."

· The application of the rule necessarily involves flexibility, each case requiring consideration of the circumstances presented. Perhaps because of that very fact, the appellate decisions on the subject are in seeming conflict. We refer those interested to "Contributory Negligence of a Minor as a Matter of Law in Missouri", James W. Starnes, Washington University Law Quarterly, 1959, page 281 *et seq*. We do not undertake an extensive review of the authorities on this subject because our Supreme Court has recently done so in Bollman v. Kark Rendering Plant, Mo.Sup., 418 S.W.2d 39.

We do not intend to summarily dismiss the authorities cited by defendant in support of his contention that the minor plaintiff, Ronald Van Brunt, was contributorily negligent as a matter of law, neither do we believe an extended discussion of them is necessary. The factual situation presented to us by the record is qualitatively different from those involved in the cases upon which defendant relies. In McGee v. Wabash R. Co., 214 Mo. 530, 114 S.W. 33, a bright 13 year old boy attempted to cross a single track crossing. At six feet from the crossing a train approaching could be seen from 40 to 100 feet away. Without looking, the boy attempted to cross the track and was killed. In Battles v. United Rys. Co. of St. Louis, 178 Mo.App. 596, 161 S.W. 614, a nine year old boy stepped from behind a moving streetcar going one direction and

was struck by defendant's streetcar going in the opposite direction. In each instance, recovery was barred by the negligence of the respective child as a matter of law. The last case cited by defendant, Carpenter v. Kansas City Public Service Co., Mo.Sup., 330 S.W.2d 797, involved a 72 year old plaintiff and is obviously irrelevant to our inquiry.

▬ In the case before us, considering all the evidence in a light most favorable to plaintiff, there was no evidence that the minor plaintiff knew, let alone appreciated, the danger of making the lefthand turn when he did. The defendant's evidence indicated that defendant first sounded his horn when the plaintiff moved from the east lane into the west lane of the street. At the time the horn was first sounded, defendant was in the process of passing by using that lane normally used by traffic coming from the opposite direction. Plaintiff's evidence indicates that defendant sounded no horn at all. By the time the horn *was* sounded, at defendant's speed, which we must assume was 36½ M.P.H., the collision was a virtual certainty, as by defendant's evidence plaintiff and defendant were then 10 to 12 feet apart. It may be that plaintiff exposed himself to danger, but we cannot say, as a matter of law, under the circumstances, that plaintiff voluntarily exposed himself to a known danger. In the Bollman case, supra, we find at page 46:

"Other principles pertinent to an inquiry such as this (the contributory negligence of a minor) is 'a voluntary exposure to known danger,' (adopting the language found in Bridges v. Arkansas-Missouri Power Co., Mo.App., 410 S.W.2d 106) and that *it is knowledge and appreciation of the danger and risk of injury in an instrumentality or condition that bars recovery for contributory negligence,* and not merely knowledge of the physical characteristics of the instrumentality or condition; that '(m)ere knowledge that injury might result, without appreciation of the risk of injury to which his conduct

exposed him, is not sufficient.' Capacity to appreciate the danger is of vital importance in making this determination." (Parenthetical comments and emphasis ours).

See also, Cathey v. DeWeese, Mo.Sup., 289 S.W.2d 51 and Bridges v. Arkansas-Missouri Power Co., supra.

We rule this point against defendant, since from the evidence the contributory negligence of the minor plaintiff was a jury issue, under proper instruction.

This case may be retried. We conclude with consternation that although the trial court and jury may have had the full benefit of the evidence presented, the record before us is full of unarticulated gestures. During the examination of witnesses Charles Schliebs, Elsie Schliebs and Corporal Anthony, repeated references were made to plaintiff's photographic Exhibits 1 and 2. Attempts were made to develop and describe such crucial facts as point of impact, location of skidmarks, etc. As an example we relate the following dialogue from the testimony of Charles Schliebs:

MR. DRAPE: "Plaintiff's Exhibit 2, right here. Could you tell us where Ron was when he got hit by the Cadillac?

(Objection)

MR. DRAPE: "Did you see the Cadillac hit Ron?"

WITNESS: "I don't think so."

MR. DRAPE: "What was the only— what did you actually see occur between the Cadillac and Ron?"

WITNESS: "Well, as good as I can remember three years ago, I turned around and saw Ron up in the air; the car was right here (indicating) and Ron was up like that (indicating)."

MR. DRAPE: "That's all."

■ Unseen gesticulations, even when recorded, convey no meaning. A reviewing court must base its conclusions and actions solely on matters appearing in the record. Pretti v. Herre, Mo.Sup., 403 S.W.2d 568; Lowes v. Union Electric Company, Mo. App., 405 S.W.2d 506. In the *Lowes* case, plaintiff's expert was being interrogated concerning some electrical equipment. The record included repeated references of "here", "there", etc., from which it was impossible for the reviewing court to discern any meaning. At page 513, the court states:

"The words 'here', 'there' and 'other side' are meaningless in themselves. During the heated conflict of a trial, ardent advocates are often inclined to assume that we will get the same detailed picture they are witnessing. Not so; our knowledge of what happened in the courtroom is limited to what we read in the transcript * * *"

The judgment of the trial court is reversed and the cause is remanded.

HOWARD, P. J., and CROSS, J., concur.

MORGAN, J., not participating, because not a member of the Court when the cause was submitted.