Tami ROOT, by and through her next friend, Paul ROOT Appellant,

v.

**Robin MUDD, Respondent.**

**No. WD 55147.**

Missouri Court of Appeals, Western District.

Submitted July 7, 1998.

Decided Nov. 17, 1998.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 22, 1998.

Application for Transfer Denied Jan. 19, 1999.

---

Robert B. Reeser, Jr., Sedalia, MO, for appellant.

J. Christopher Spangler, Sedalia, MO, for respondent.

Before SMART, P.J., ELLIS and HOWARD, JJ.

SMART, Judge.

This case, which arises out of a collision between a car and a nine-year-old girl riding a bicycle, requires that we address issues related to the degree of care which must be exercised by a child bicyclist and the reference point of that standard of care. Tami Root, by and through her next friend, Paul Root, appeals the trial court's entry of judgment after a jury verdict allocating five percent of the fault in a collision to the defendant, Robin Mudd, resulting in a $600.00 judgment in Root's favor. The collision occurred when Root, who was riding her bicycle, was struck by a car Mudd was driving. Root alleges that the trial court erred by not permitting her to submit an instruction defining the negligence of a minor in connection with Mudd's affirmative defense of comparative negligence. Because we find that the court's instructions did not accurately instruct the jury concerning the reference point of the standard of care, we reverse and remand.

## Factual Background

Around 3:00 p.m. on May 20, 1993, Robin Mudd, then twenty years old, was driving her sedan west on Rosehill Road, approaching the South Walnut Street intersection in Cen-

terview, Missouri. Nine-year-old Tami Root had just completed school for the day and was riding her bicycle north on South Walnut Street. Root entered the intersection and turned left to go west on Rosehill Road. As Mudd approached the intersection, she saw a group of children on bicycles riding west in the eastbound lane of Rosehill Road and reduced her speed. Mudd did not recall actually seeing Root before the collision but locked her brakes in an effort to stop, stopping almost completely before impact. Root testified that she stopped at the stop sign and looked both ways before proceeding. A witness, Patty Bailey, testified that Root rode her bicycle directly into the path of Mudd's vehicle. Ms. Bailey testified that Root neither stopped nor looked in Mudd's direction before turning onto Rosehill Road. Root admitted that she knew she was required to stop for stop signs and to look in both directions for oncoming traffic before entering an intersection.

Root sustained dental injuries as a result of the accident. Two of her teeth required extensive root canal treatment and will require more extensive work in the future. She also suffered minor chipping and fractures to other teeth that will require future treatment.

Root sued Mudd for damages arising from the collision. The case was submitted to the jury on the theory that Mudd was negligent in failing to swerve or to sound a warning. A comparative fault instruction instructed the jury to reduce Root's recovery to the extent that she failed to yield the right of way or keep a careful lookout and was thereby negligent. The definition of "negligence" submitted to the jury, which was based upon MAI 11.03, defined negligence as the failure to use the "highest degree of care." That standard was defined in the same instruction as "that degree of care that a very careful person would use under the same or similar circumstances." Root requested that a separate negligence definition, based upon MAI 11.04, be submitted in connection with the comparative fault instruction. Root's proposed instruction defined negligence as "the failure to use that degree of care which an ordinarily careful girl of the same age, capacity and

experience would use under the same or similar circumstances." The trial court rejected this instruction. The jury returned a verdict finding both parties negligent and assigning 95% of the fault for the collision to Root. The jury found Tami Root's damages to be $12,000.00. Thus, Tami Root was awarded the net amount of $600.00. Root unsuccessfully moved for a new trial and now appeals on the ground that the trial court erred in refusing to submit the requested instruction defining the negligence of a minor.

### Instructional Error

■ Root contends on appeal that the combined "negligence" and "highest degree of care" definitions submitted by the trial court were erroneous in that they caused Root to be held to the highest degree of adult care in riding her bicycle on the street. Root maintains that the trial court should have submitted a definition that would have allowed the jury to find Root negligent only if she failed to exercise the degree of care of an ordinarily careful nine-year-old girl would have exercised under the same or similar circumstances.

Root relies upon *Van Brunt v. Meyer,* 422 S.W.2d 364 (Mo.App.1967). In *Van Brunt* this court held that a thirteen-year-old bicyclist was required to exercise only ordinary care, and the ordinary care expected of the plaintiff would be the degree of care ordinarily exercised by a child of similar age, experience and capacity. *Id.* In 1977, ten years after *Van Brunt* was decided, the legislature enacted legislation concerning bicycle equipment and the rights and duties of bicyclists. §§ 307.180 to 307.193, RSMo.1994. The parties dispute whether *Van Brunt* still accurately reflects the law applicable to young bicyclists in view of the enactment of the bicycle legislation.

Sections 307.180 to 307.193, RSMo 1994, describe the equipment required on bicycles and the rights and duties of riders of bicycles and motorized bicycles. Section 307.188, provides:

Every person riding a bicycle or motorized bicycle upon a street or highway shall be granted all of the rights and shall be sub-

ject to all of the duties applicable to the driver of a vehicle as provided by chapter 304, RSMo, except as to special regulations in sections 307.180 to 307.193 and except as to those provisions of chapter 304, RSMo, which by their nature can have no application.

The statute, by its plain terms, specifies that bicyclists shall be subject to "all of the duties applicable to the driver of a vehicle as provided by Chapter 304." One duty provided by Chapter 304 is the duty to operate a vehicle with the highest degree of care. § 304.012(1), RSMo. Supp.1997. "Person" is not defined in Chapter 307. However, § 304.001(10), RSMo Supp.1997, which is unchanged from former § 304.001(4), defines "person" for purposes of chapters 304 and 307 as "any natural person, corporation, or other legal entity." The statute provides no express exclusion for minors. The degree of care specified by § 304.012(1) is as follows:

> Every person operating a motor vehicle on the roads and highways of this state shall drive the vehicle in a careful and prudent manner and a rate of speed so as not to endanger the property of another or the life or limb of any person and shall exercise the highest degree of care.

Thus, defendant Mudd argues that unless the degree of care expected of motorists "by its nature" can have no application to bicyclists and riders of motorized bicycles, the ruling of *Van Brunt* as to a standard of ordinary care generally expected of young bicyclists has been statutorily overruled by implication.

Root contends that the standard of care for operators of motor vehicles cannot possibly apply to bicyclists because bicycles "pose no threat of serious injury to anyone" except the rider. While bicycles certainly pose less of a direct physical threat to others than automobiles, we fail to see that it is necessarily true that the legislature would have agreed that the duty of the highest degree of care should not be applied to bicyclists. It goes without saying that a car-bicycle collision would be a traumatic event for both

parties, although the automobile operator would be far more likely to escape physical injury than the bicyclist. We cannot say categorically that the legislature, in enacting this statute, did not intend to require bicyclists to exercise the highest degree of care.

Although the legislature has enacted amendments to the motor vehicle safety statute, the statute has consistently, since 1907, required all persons operating motor vehicles to exercise the highest degree of care. *See* Section 8523, RSMo.1909.[1] The language of the statute makes no exception for minors. *Wilson v. Shumate,* 296 S.W.2d 72 (Mo.1956), (seventeen-year old driver was required to exercise the highest degree of care in operating a motor vehicle). Because the bicycle safety statute (§ 307.188) also makes no age distinction among persons riding bicycles or motorized bicycles on streets and highways, we conclude that the jury was properly instructed that Root had a duty to operate her bicycle with the highest degree of care. The trial court did not err in its determination that a bicyclist is required to exercise the highest degree of care while operating a bicycle on a public street.

## Components of a Negligence Standard

The determination that Tami Root was required to operate her bicycle with the highest degree of care when turning onto Rosehill Road is not the end of our inquiry, however. A standard of negligence has at least two components: the degree of care (ordinary or higher) and the reference point (e.g., the reasonable person, or a child of the same age, capacity, and experience). Therefore, our conclusion that minor bicyclists are subject to the highest degree of care does not resolve the issue of whether the highest degree of care required of Tami Root was the care "a very careful *person* " would use under the same or similar circumstances, or the care that a "very careful *child* " of "the same age, capacity and experience" would use under the same or similar circumstances.

---

1. The "highest care" standard that now contained in 304.012(1), RSMo Supp.1997, formerly appeared in 304.010(1), RSMo 1994, which had its origins in § 7774, RSMo 1929, enacted by the

Missouri General Assembly (H.B.180) sitting in Extra Sessions in 1921. This was itself a reenactment of § 8523, RSMo 1909, passed by the legislature in 1907.

## Comparative Negligence and Children

 ▪ In 1993, the Missouri Supreme Court's decision in *Lester v. Sayles*, 850 S.W.2d 858 (Mo. banc 1993), dealt with the matter of children and comparative negligence. The court looked to its earlier decisions holding that children may be found contributorily or comparatively negligent. *Id.* at 866–67. Except where the child is so young or the evidence of incapacity so overwhelming that reasonable minds could not differ on the issue, a child's comparative negligence is a matter of fact. *Id.* "The fault of a child should be determined by the factfinder in each case, based upon that degree of care exercised by children of the same or similar age, judgment, and experience." *Id.*

 The Missouri Supreme Court in *Lester* held that a child's negligence would be determined based on the reference point of a child of the same or similar age, judgment and experience. Nothing in the court's decision requires the conclusion that its holding should be limited to cases in which the degree of care to be expected was "ordinary care." While MAI 11.04 defines the negligence of a child in terms of failure to exercise ordinary care, jury instructions may deviate from MAI to the extent MAI does not properly state the substantive law.

 The unqualified language of *Lester* on the subject of a minor's comparative negligence, together with the well-established common law rule that minors are held to the standard of adult conduct only when engaged in primarily adult activities, suggests that the child's fault should be determined with reference to the degree of care required by children of the "same or similar age, judgment and experience." See Restatement (Second) of Torts, § 283. Indeed, although *VanBrunt v. Meyer* may have been statutorily overruled as to the *degree* of care expected of a child, we see no indication that it has been overruled as to the reference point of a child's age, experience and capacity. We conclude that Root is correct in stating that a child on a bicycle is not evaluated by the same reference point as an adult. Although the legislature could theoretically have intended to hold minor bicyclists to the adult standard of the "very careful *person*," we

believe it is more reasonable to conclude that the legislature never intended to alter the traditional rule so as to hold children to the reference point of an adult. We also have no reason to believe the legislature regarded bicycle-riding as an "adult activity" in the same sense as operating a motor vehicle is an adult activity. We are reluctant to assume, in the absence of a specific textual basis in the statute, that the legislature intended to abrogate a well-established common law rule which allowed the jury to consider a minor bicyclist's age, capacity, and experience in determining whether the child had failed to exercise the appropriate degree of care in operating a bicycle.

## Preservation of the Issue of the Reference Point of the Standard of Care

 Although we agree with Root as to the applicable reference point, we note that the instruction Root offered held the child only to the standard of ordinary care rather than the higher degree of care required by statute. While the law may require the jury to determine a minor bicyclist's negligence according to the degree of care of a *very careful* minor of the same or similar age, capacity and experience, Root never presented this option to the trial court. Instead, Root's instruction defined the applicable negligence as a failure to "use that degree of care which an *ordinarily careful* girl of the same age, capacity and experience would use under the same or similar circumstances" (emphasis added). Thus, even though Root is correct that the applicable reference point was that of a girl of the same age, capacity and experience, Root's proffered definition of negligence misstated the *degree* of care required of the child.

Rule 70.03 requires:

Counsel shall make specific objections to instructions considered erroneous. No party may assign as error the giving or failure to give instructions unless the party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection. Counsel need not repeat objec-

tions already made on the record prior to delivery of the instructions. The objections must also be raised in the motion for new trial in accordance with Rule 78.07.

At trial, Root did not object explicitly to the reference point of the standard of care, but instead, by objecting to Mudd's interpretation of the effect of the statute, she was in effecting objecting as to both the issue of the degree of care and the reference point of the standard of care. Also, in this case we note that Root's tendered instruction was correct as to the reference point, and accurately stated what appeared to be the law as declared in *Van Brunt v. Meyer*, 422 S.W.2d 364 (Mo.App.1967). The issue of the possible application and effect of § 307.188 was an issue of first impression. Under these circumstances, while it is arguable that Root did not *specifically* preserve error as to the issue of the reference point of the standard of care, we will exercise our discretion to review the allegation of error.

### Prejudice

■ The instruction submitted to the jury was erroneous in that it did not refer the jury to the child's age, capacity, and experience in its judgment of the degree to which Root's damages were caused by Root's own actions. Instead, the instruction submitted permitted the defendant to argue that Tami Root's conduct should be measured as though she were an adult on a bicycle. When an instruction imposes upon a party a standard of care greater than that required by law, prejudice is ordinarily presumed. *Schlegel v. Knoll*, 427 S.W.2d 480, 485 (Mo. 1968); *Borgstede v. Waldbauer*, 337 Mo. 1205, 88 S.W.2d 373 (Mo. banc 1935) (instruction improperly described defendant's standard of care). *Schneider v. Bi–State Development Agency*, 447 S.W.2d 788, 791 (Mo. App.1969) (instruction imposing "highest degree of care" when the law required only "ordinary care" held prejudicially erroneous).

The case of *Fowler v. Park Corp.*, 673 S.W.2d 749 (Mo. banc 1984), seems contrary. In that case, the court refused to reverse a judgment for plaintiff even though the "very careful and prudent person" standard was used rather than a standard of the "ordinari-ly careful and prudent person." The court did not provide extensive analysis of the issue of prejudice, but instead seemed to focus on the fact that the difference was only a "single word" in the definition instruction, and also concluded that counsel for defendant was guilty of "sandbagging," by intentionally failing to inform the trial court of counsel's objection to the instruction.

Here, we doubt this case is controlled by *Fowler*. Counsel in this case did not intentionally withhold from the trial court an objection to the reference point of the standard of care. Counsel argued plaintiff's position strongly. Moreover, this case differs from *Fowler* in that in this case counsel for Ms. Mudd was permitted under the instructions to argue to the jury that Tami Root should be judged by the same standard as an adult. We think such an argument is far more concrete than a single reference to the difference between "very careful" and "ordinarily careful."

Ms. Mudd argues that there is no prejudice here because Miss Root admitted she knew she was required to at the stop sign and to look both ways. Certainly, under *any* reference point of the standard of care, we would expect the majority of the fault to be allocated to Miss Root. However, we do not see how we can be so certain that, under a different reference point of the standard of care, the jury might not have found Ms. Mudd to have more than 5 percent of the fault. Consequently, we believe the presumption of prejudice dictates reversal. We conclude the instructional error was prejudicial.

We reverse the judgment of the trial court and remand for a new trial.

ELLIS and HOWARD, JJ., concur.