Harold SCHLEGEL, Appellant,

v.

Thomas KNOLL, Respondent.

No. 52973.

Supreme Court of Missouri,
Division No. 2.

May 13, 1968.

Padberg & Raack, Godfrey P. Padberg, St. Louis, for appellant.

Evans & Dixon, Ralph C. Kleinschmidt, St. Louis, for respondent.

PRITCHARD, Commissioner.

The jury returned a verdict against plaintiff, a police officer, upon his $50,-000 claim for personal injuries. Plaintiff was operating a three-wheeled motorcycle, called a tri-car, at the time of its collision with defendant's automobile. Plaintiff was leaving his former traffic control post and arrived at the "Y" intersection of Channing Avenue (a north-south street), Olive Street and Lindell Boulevard in St. Louis, Missouri. He was to proceed to his next post at the intersection of Kingshighway and Lindell, his route being westerly on the latter street. Lindell is, between Grand and Theresa avenues where the collision occurred, 66 feet wide and has three eastbound and three westbound lanes for travel, with additional parking lanes on each side.

President Johnson was visiting in St. Louis on that Valentine's day, February 14, 1964, and incident to that visit intensive security precautions were taken by the police department. Plaintiff's first assignment of duty was to direct traffic along the President's route at 18th and Market streets and ten minutes after the President passed that point plaintiff's orders required him to go to Kingshighway and Lindell to help direct traffic.

As plaintiff proceeded onto Lindell toward his second post, the traffic in the three westbound lanes at Theresa was completely clogged or stopped, according to his evidence. Defendant testified that although traffic was heavy it was moving slowly, being "stop and start" because traffic was being let through the intersection with Grand Avenue to the west. There was then little eastbound traffic and plaintiff noticed those lanes were open. He then pulled into the inside eastbound lane and drove westerly at a speed of 20 to 25 miles per hour and at a distance of 2 to 3 feet from the center line and 3 or 4 feet from the westbound stopped cars (travelling about the center of the inside lane which was about 8 feet wide).

Defendant, intending to turn left into a Post Office parking lot on the south side of Lindell, pulled into plaintiff's path. Both tried to swerve, but they came into collision and plaintiff was injured.

Plaintiff claims prejudicial error was committed against him by the giving of Instruction No. 5:

"Your verdict must be for defendant whether or not defendant was negligent if you believe:

First, plaintiff either:
drove on the wrong side of the road, or failed to operate his ve-

hicle a safe distance to the left of westbound traffic, or failed to sound his horn before starting to pass defendant's vehicle; and

Second, plaintiff's conduct in any one or more of the respects submitted in paragraph First, was negligent; and

Third, such negligence of plaintiff directly caused or directly contributed to cause any damage plaintiff may have sustained.

(M.A.I. No. 28.01 -
Submitted by Defendant.)"

It is first said that the submission that plaintiff "drove on the wrong side of the road" was prejudicially erroneous because under the facts of this case the eastbound lanes of travel were not the wrong side of the road for plaintiff; and the submission prevented a recovery by him under his theory that the submission did not allow for his being in the eastbound lanes of travel in a nonnegligent manner.

Plaintiff makes no claim here that he comes within any exemption of the statute upon emergency vehicles, § 304.022, RSMo 1959, V.A.M.S., in that his tri-car was a publicly owned police department vehicle, being operated by him with siren and red lights on, so that he might disregard regulations governing direction of movement or turning in specified directions or any other exemption of the statute. Plaintiff did not have his siren on (his instructions were not to sound it), but his red lights were on. Although plaintiff pleaded (by amendment to his petition) defendant's violation of said § 304.-022 in failing to yield to plaintiff and failing to remain in a stopped position until plaintiff's vehicle had passed, his sole submission to the jury of defendant's negligence was a failure to keep a careful lookout (MAI 17.01).

Thus it is that plaintiff's conduct must be judged in connection with the applicable law without exception as to status of his vehicle. Annotation, "Police Vehicle—Accident—Liability," 83 A.L.R.2d 383, 397 et seq., §§ 5, 6. In this connection defendant read into evidence § 831.020, Paragraph 1 of the Revised Code of the City of St. Louis: "All drivers shall: (1) Drive on the right half side of the street, roadway, alley or parkway and to the right of a divider or to the right of an official traffic line except on one-way streets."

The further argument of plaintiff is that the submission in Instruction No. 5 made it impossible for him to recover under his theory of the case ("that, although westbound in the eastbound lanes of travel, under the circumstances, this was not the 'wrong side of the road' and, further, that he went onto that side of the road in a deliberate fashion and in a non-negligent manner") for the jury could believe all of plaintiff's evidence, yet be forced to find in favor of defendant under plaintiff's own theory of the case.

It is difficult to conceive of just what reference Instruction No. 5 should have made to plaintiff's actions in *driving* onto the wrong side of the road if plaintiff's theory is correct. The situation is not analogous to the skidding cases (mere skidding "is not negligence and does not give rise to an inference of negligence," Girratono v. Kansas City Public Service Co., 363 Mo. 359, 251 S.W.2d 59, 63). The *ultimate* facts bearing on negligence are all that must be included in instructions under MAI. The case of Evans v. Colombo, Mo.App., 311 S.W.2d 141, had in it an omission of the finding of the reason for crossing over the center line "regardless of the reason 'for the crossing, whether excusable or inexcusable, without any consideration of the manner in which the crossing occurred (while skidding) and without requiring the finding of any negligent act on the part of defendant which caused the skidding-crossing." Loc. cit. 311 S.W.2d 146. The present case is not one of skidding, where under the cases

that act may come about without negligence (and which are in a class by themselves), but is one where plaintiff deliberately *drove* his tri-car onto the eastbound lanes, being the wrong side of the road for him under the ordinance. Under all of the facts and circumstances, and considering the necessities of the case, it was for the jury to determine whether plaintiff did proceed onto the wrong side of the road in a negligent or nonnegligent manner. "Ordinarily, however, proof of the driving of a car onto the wrong side of the highway and into collision makes a submissible case of negligence." Zeigenbein v. Thornsberry, Mo., 401 S.W.2d 389, 394 [8]. The evidence of violation of the ordinance as negligence may be rebutted by facts showing justification or excuse, Harris v. Hughes, Mo.App., 266 S.W.2d 763, 770 [9, 11]; and see 65A C.J.S. Negligence § 204, p. 448 et seq. Instruction No. 5, in submitting that plaintiff was on the wrong side of the road, and requiring the finding that he was thereby negligent, rightfully follows MAI. It does not deprive plaintiff of his theory of the case. He was entitled to argue to the jury that Instruction No. 5 should not be applicable to him by reason of his being on the wrong side of the road. That argument could be based upon the evidence of plaintiff of justification or excuse which tended to show that the traffic was clogged or stopped in the westbound lanes; that he had to reach his second traffic control assignment quickly; that the eastbound lanes were clear, or practically clear, of traffic; and that other officers had preceded plaintiff in the use of the eastbound lanes. On the other hand, there was evidence supporting the submission of Instruction No. 5 of plaintiff's contributory negligence in driving onto the wrong side of the road. Defendant's evidence is that although the westbound traffic was heavy, it was moving slowly, being let through the intersection of Grand and Lindell to the west, necessitating starts and stops. These issues were for the jury. Tener v. Hill, Mo.App., 394 S.W.2d 425, and compare Lemonds v. Holmes, Mo.App., 236 S.W.2d 56, 60.

Plaintiff says that Instruction No. 5 is further in error prejudicial to him in alternatively submitting that he "failed to operate his vehicle a safe distance to the left of westbound traffic." The evidence in this respect shows that plaintiff was riding west in about the middle of the inside lane of the south (eastbound) side of Lindell, next to the center line and 2 to 3 feet from it and 3 to 4 feet from the line of automobiles proceeding west. Just prior to the collision two other officers had proceeded west, using the lane nearest the center, on the south side of Lindell, being, as was plaintiff at the time of his injury, in the eastbound lanes. When he was about half way up the block he saw a car pull out from a parked position when plaintiff was about two car lengths from him. Plaintiff was going 20 to 25 miles an hour and had sounded his horn. No directional lights were on nor was a hand motion of the driver of the car given to let plaintiff know he was pulling out—there was no notice at all that he was going to pull out from the stopped line of traffic. When plaintiff first saw defendant's car it had just started to come out in the eastbound lane, across the center, and a part of it was into the eastbound traffic lanes, and it was in motion, slowly. Defendant testified that he was moving about 10 miles an hour when he started to turn left. He did not give any signal that he was going to turn. The tri-car was moving at the time of impact, and defendant was either stopped or just barely moving. When defendant first saw plaintiff, half of his car was over the center line, and the other half was back of the center line, in the process of turning (to go into the post office parking lot on the south side of Lindell).

It is said by plaintiff that this instruction is not covered by MAI; it imposed a higher duty than that demanded by law;

it conflicts with the law and the prior submission in the instruction; it was too general and failed to establish guidelines for the jury and constituted a roving commission to the jury.

Section 304.015, subd. 3, RSMo 1959, V.A.M.S., provides: "It is unlawful to drive any vehicle upon any highway or road which has been divided into two or more roadways by means of a physical barrier or by means of a dividing section or delineated by curbs, lines or other markings on the roadway, except to the right of such barrier or dividing section, *or to make any left turn* or semi-circular or U-turn on any such divided highway, except in a crossover or intersection." (Italics added.) See also 8 Am.Jur.2d Automobiles and Highway Traffic, §§ 806, 807, p. 361 et seq.

Plaintiff could reasonably assume that drivers of vehicles proceeding west in the inside lane of Lindell (such as defendant) would have observed the vehicles using the eastbound lanes of his preceding fellow police officers. Plaintiff could further assume that no person in the westbound inside lanes would violate § 304.015, subd. 3, supra, which is certainly applicable to Lindell, a six-lane street divided into two roadways. These matters bear upon plaintiff's reasonable anticipation that some danger was inherent in his using that portion of the eastbound roadway 2 to 3 feet from the center line, and of course any evidence that it was inherently dangerous so as to impute notice or knowledge thereof is absent in this case. One is not bound to foresee every possible injury which might occur. 65 C.J.S. Negligence § 5(4), p. 520; 38 Am.Jur. Negligence, §§ 23, 24, p. 665 et seq. In the case of Taylor v. Dale-Freeman Corporation, Mo., 389 S.W.2d 57, it was held that defendant's truck driver reasonably could assume that plaintiff would stay in a place of safety "and could not reasonably be held to anticipate that plaintiff, either through plaintiff's negligence, or accident, or misadventure, would change his position from the safety of the dock to the perilous blind spot behind the slowly backing truck." 389 S.W.2d 61. So here, plaintiff driving where he was within 2 to 3 feet from the center line could assume that defendant would stay in the safe westbound lane, and would not turn to his left into plaintiff's path. In the Taylor case it was further said, loc. cit. 389 S.W.2d 60 [1–3], " 'Foresight, not retrospect, is the standard of diligence. It is nearly always easy, after an accident has happened, to see how it could have been avoided. But negligence is not a matter to be judged after the occurrence. It is always a question of what reasonably prudent men under the same circumstances would or should, in the exercise of reasonable care, have anticipated.' * * * '*A person is not required to look for danger where he has no cause to anticipate it, or when the danger would not exist but for the negligence of another.*' (citing cases.) It is not negligence to fail to anticipate that another will be negligent for one is entitled to assume and act upon the assumption that others will exercise due care for their own safety, *in the absence of notice to the contrary.*" (Emphasis added.)

In Highfill v. Brown, Mo., 320 S.W.2d 493 (cited in the Taylor case, supra), the plaintiff was in the process of passing defendants' truck on U. S. Highway 65 north of Springfield, Missouri, when the latter made a left turn intending to enter a private driveway. It was held that it was not error to award plaintiff a new trial by reason of the erroneous giving of an instruction upon his contributory negligence because, "The instruction did not submit to the jury any facts on which to base a finding that plaintiff should have known Brown intended to turn left into the driveway. The instruction should have required a finding of some fact or facts *from which plaintiff*

could have determined that Brown intended to turn left, for example, a timely warning." (Emphasis added.) 320 S.W.2d 496. In that case there was evidence that Brown did and also that he did not timely signal of his intention to make a left turn. In this case there is positive evidence from both plaintiff and defendant that defendant gave no signal whatsoever of his intention to turn left. See the case of Nance v. Lansdell, Mo.App., 73 S.W.2d 346, 349 [5], holding that absent a statute on the subject it is the common-law duty of the driver of a motor vehicle to give a signal or warning of his intention to turn right or left. Absent the signal here, plaintiff could reasonably assume that defendant was not going to turn to his left. Under the foregoing cases and authority, there was nothing in evidence putting plaintiff on notice of any danger. Merely driving 2 to 3 feet from the center line, absent such notice or knowledge that a danger existed, under all the facts here, would not be negligence, and there would be no requirement that he drive *farther* away from the center line. His position was such that he would pass the line of traffic safely, unless some negligence of other drivers (such as defendant) intervened. That portion of Instruction No. 5 is prejudicially erroneous because it is not supported by the evidence, and since it requires that plaintiff anticipate any possible act of others on his path of travel it imposed upon him a higher duty than that required by law.

For error in giving Instruction No. 5, the judgment is reversed and the case is remanded for a new trial.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by PRITCHARD C., is adopted as the opinion of the Court.

All of the Judges concur.