**Dana Ann WILL, a Minor, etc. and Bernard R. Will, Appellants,**

**v.**

**Earl L. GILLIAM, Respondent.**

No. 53727.

Supreme Court of Missouri,
Division No. 1.

April 14, 1969.

Hullverson, Richardson & Hullverson, Thomas J. Motherway, St. Louis, for appellants.

Harlan & Harlan, John L. Harlan, Jr., St. Louis, for defendant-respondent.

HOUSER, Commissioner.

This is an action by Dana Ann Will, 11 years of age, pro ami, for $50,000 damages for personal injuries and by her father for reimbursement and loss of services, for $10,000 damages against Earl L. Gilliam, arising out of a collision between two vehicles at the intersection of Highway 21 and Lin-Ferry Drive in St. Louis County. There was a jury verdict for defendant. Both plaintiffs have appealed.

On this appeal a portion of the final argument of defendant's counsel and the rulings of the court in connection therewith are challenged.

The petition alleged that the child was a passenger in a station wagon driven south on Highway 21 by her mother, approaching and turning left onto Lin-Ferry Drive when defendant, driving north on Highway 21, caused his automobile to collide with the right-hand rear half of the station wagon, thereby injuring Dana Ann. The negligence pleaded was excessive speed, violation of lookout and warning duties and humanitarian failure to stop, slacken, swerve or sound a warning. Defendant filed a general denial. The collision occurred at 11:30 A.M. There was a mist or snowy rain falling and the concrete 20-foot pavement was "wet mixed with snow." Highway 21 was a through highway, slightly upgrade for southbound traffic. There were no stop signs for north or southbound traffic on Highway 21. There was a 40-mile speed limit. Dana Ann and her two older sisters were passengers in the station wagon. Dana Ann was seated in the rear. The station wagon was traveling from 30 to 40 feet behind a Sprite sports car driven by Dana Ann's father. The drivers of both vehicles intended to turn left onto Lin-Ferry Drive. The Sprite successfully executed the left turn but the station wagon driven by Mrs. Will was struck by defendant's car as the wagon was making the left turn. Mrs.

Will testified that she put her directional signals on when 100–150 feet north of the intersection; that she saw defendant's northbound car just coming over the crest of the hill (approximately 200 feet to the south) at a time when the station wagon was 100 feet from the intersection. She testified that there was nothing unusual about the speed of defendant's car; that he was going at a normal rate of speed. She did not continue to watch defendant's car. The speed of the station wagon then was 20 m. p. h. When probably 20 feet north of the north edge of Lin-Ferry Drive Mrs. Will turned from her right-hand, southbound lane across the center line and completely into and occupied the northbound lane, slowing down to 10 m. p. h. at which constant 10-mile speed she commenced her left-hand turn, following the sports car, which completed its left turn into Lin-Ferry Drive. She testified that when she started to make her left turn the station wagon was two car lengths (20 to 40 feet) north of the center line of Lin-Ferry Drive. She "cut the corner short" by starting the left turn before she reached the north edge of the intersecting street. She saw defendant's car again "the flash second that the impact happened." When the vehicles collided the front end of the station wagon was into Lin-Ferry Drive and the back portion was "blocking the northbound lane." As a result of the collision the station wagon did a complete half circle and was pushed back 30 feet.

*Defendant's testimony:* Traveling north at 25 m. p. h., slightly downgrade, with his windshield wipers on, defendant saw the southbound sports car make a left turn in front of (and "not too awfully far" ahead of) him. Defendant touched but did not apply his brake. As soon as the sports car "cleared the road" defendant saw the station wagon "right there," "right in front" of him, two car lengths away. All of the station wagon was completely in defendant's lane and it was headed south at a slight angle. The front of the station wagon had not then reached

the north edge of Lin-Ferry Drive. Other cars were coming south in their proper (west) lane, so that both lanes were blocked or occupied, and there was "no way for [defendant] to go"—"no place to go." Defendant stepped on his brake, the car slid, "there was .nothing [he] could do," and his car collided with the wagon at a point north of the intersection (not *in* the intersection). Defendant claimed that he was watching the sports car turning in front of him; that he was concentrating on it making a turn and that the sports car was "blocking off" or obstructing his view of the station wagon.

An independent eyewitness, Allan Smith, first saw defendant's car when it was 20–30 feet south of the intersection. When he first observed defendant's car it appeared that "he was nosing down as if he were applying his brakes." At that time the station wagon was in the process of cutting across the highway from right to left, one or two car lengths north of the intersection. At the time of impact the station wagon was nearing the intersection, cutting the corner short, trying to get around the corner. The point of collision was not in the intersection but was at the north edge of the intersection, "right at the northeast corner," and the station wagon was pointed in a southeast direction.

Plaintiffs' case was submitted to the jury on defendant's failure to keep a careful lookout, or failure to slacken speed or excessive speed. Instruction No. 8 directed a verdict for defendant if the jury did not believe that defendant was negligent as submitted. The court refused to give the following instruction offered by defendant:

## "INSTRUCTION A

"The phrase 'right of way' as used in these instructions means the right of one vehicle to proceed ahead of the other.

"When the driver of a vehicle intends to turn left at an intersection, and another vehicle, approaching from the opposite direction, is within the intersection, or is so close that the turn would create an immediate hazard, the approaching vehicle has a right to proceed ahead of the vehicle intending to turn left."

According to an affidavit filed with plaintiffs' motion for new trial (to which no counteraffidavits or other denials were directed), after the court marked Instruction A refused, in chambers, the judge suggested to defense counsel that the court knew how the right of way Instruction A could be argued to the jury, namely, by defense counsel saying to the jury "The Court will stop me if this is not the law" and by then having defense counsel read the instruction to the jury. Defense counsel said he would follow the suggestion, and during final argument defense counsel did pick up a copy of the refused instruction from the counsel table and read it to the jury.

Here is the sequence of events: After arguing that there was "no way in the world" that defendant could have avoided this accident and that defendant "did everything he could do," defendant's counsel stated that Mrs. Will had placed herself and her children in a precarious position where an accident was inevitable; and that it was unrefuted that the car in which Dana Ann was riding was on the wrong side of the road at the time this impact occurred. The record continues (defendant's counsel, Mr. Harlan, speaking):

"Now, the law is very clear in this state —and I think His Honor will correct me if I make any mistake * * *

"MR. MOTHERWAY: Your Honor, I will object to any statement of law from Mr. Harlan as contrary to the Court's instructions, Number One, wherein it says the law in this case shall come from the Court.

"THE COURT: Overruled.

"MR. HARLAN: If I am wrong, I know the Court will correct me.

"MR. MOTHERWAY: I'll object to that statement, Your Honor, on the ground that the Court won't correct him unless I object.

"THE COURT: The Court will correct him if he makes a misstatement of the law.

"MR. HARLAN: The law in this state, the phrase 'right of way' means the right of one vehicle to proceed ahead of the other. When the driver of a vehicle intends to turn left at an intersection and another vehicle approaching from the opposite direction is within that intersection, or is so close that the turn would create an immediate hazard, the approaching vehicle has a right to proceed ahead of the vehicle intending to turn left.

"That, lady and gentlemen, is the law of this state, and it has been the law for as long as I am years old. There is the gist of the case. There was a failure to yield the right of way. There was an attempt to make a left turn, not only in the face of approaching traffic where there was hazard that an accident would occur, but made the left-hand turn from the wrong side of the road."

Later in the argument defendant's counsel further stated:

"He (referring to the witness Smith) very definitely places Mrs. Will on the wrong side of the road, making the left-hand turn in violation of the right of way law and guilty of the most flagrant acts of negligence. And it is negligence, per se, for what she did. In other words, the law says this, in itself, is negligence."

The argument of the right-of-way instruction, and the court's action in chambers and during argument, constituted reversible error.

 The issue pleaded, tried and submitted was whether defendant was guilty of negligence in one or more of the three respects assigned, and whether such negligence caused or contributed to cause plaintiff's injuries. Defendant filed a general denial only and not a defense based upon Mrs. Will's failure to yield the right of way. By allowing defendant's counsel to read Instruction A to the jury, however, the court sanctioned the injection into the law of the case of a false and distracting issue (the negligence of Mrs. Will); a false legal issue because beyond the scope of the pleadings; a distraction because inevitably its effect was to turn the attention of the jury away from the legal issue of defendant's negligence and direct it to the false legal issue of Mrs. Will's negligence. The instant factual situation is one which under our former practice might have been covered by a "sole cause" instruction, which under our present practice is prohibited. MAI 1.03. Although Instruction A is not drawn strictly in the form of a sole cause instruction it is so worded that it reasonably could lead the jury to believe that defendant should prevail if Mrs. Will improperly failed to yield the right of way to defendant. Although defendant was free to *argue* the factual issue of the activities of others and had a right to ask the jury to exonerate defendant on the ground that Mrs. Will was the only person causing the injury, defendant could not by an instruction inject into the case a legal issue allowing a finding relieving defendant of liability by reason of the negligence of a third party. It was error to sanction the reading of an instruction susceptible of interpretation as a sole cause instruction. Whether Instruction A be interpreted as a sole cause or a concurring cause instruction, in either view it was contrary to the law of the case. Whether Mrs. Will should have yielded the right of way to defendant was extraneous to the issues of law raised by the pleadings. If defendant was negligent in any of the respects charged against him he would not be exonerated because Mrs. Will may also have been guilty of negligence concurring with that of defendant to produce the injuries. Her negligence in failing to yield the right of way or in any other respect would not constitute a de-

fense if defendant was guilty of negligence contributing to the injuries. Green v. Kahn, Mo.Sup., 391 S.W.2d 269; Gaines v. Property Servicing Co., Mo.Sup., 276 S.W.2d 169; Glick v. Ballentine Produce Incorporated, Mo.Sup., 396 S.W.2d 609. Nor could the negligence of Mrs. Will be imputed to her 11-year-old daughter, the plaintiff, who was a mere passenger with no control over the vehicle being driven by her mother, State ex rel. Mo. Pac. R. Co. v. Cox, 306 Mo. 27, 267 S.W. 382; Peterson v. St. Louis Transit Co., 199 Mo. 331, 97 S.W. 860; Grab v. Davis Const. Co., 233 Mo.App. 819, 109 S.W.2d 882; Zalotuchin v. Metropolitan St. Ry. Co., 127 Mo. App. 577, 106 S.W. 548, so as to defeat plaintiffs' right to recover against defendant. Right-of-way considerations were not in the case and the court properly refused to instruct on the extraneous issue of right of way. Inconsistently, however, the court in the next breath and while still in chambers suggested to defendant's counsel a method by which the law of right of way, which the court had just ruled out by refusing Instruction A, could nevertheless be argued to the jury. This was improper. By this action the court was countenancing the doing indirectly of that which by its own ruling it had decided could not be done directly. By this indirect method a false legal issue was injected into the case, confusing the issue and necessarily confusing the jury. By this device the jury was permitted to infer that defendant was entitled to the right of way, regardless of the circumstances,[1] i. e. whether a very careful person in the situation of and un-

der the circumstances confronting defendant would have asserted his right of way.

 Additional but nevertheless important reasons why the procedure constituted reversible error: the instruction was given orally and by counsel, whereas instructions may be given only by the court and in writing, Civil Rule 70.01, V.A.M.R.; the instruction on the subject was incomplete, abstract, and was not written to apply to the facts in evidence; and finally, but of great importance to the proper and impartial administration of justice, the judge by his statement and subsequent silence adopted, acquiesced in and approved a statement of the law which was erroneous and which the judge had just a few minutes prior thereto refused to give to the jury as a part of the law of the case, and therefore and thereby loaned to the defendant the weight and prestige of the court in the making of an argument from which the wrong inferences were permissible.

Judgment reversed and cause remanded for a new trial.

WELBORN and HIGGINS, CC., concur.

PER CURIAM:

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

HENLEY, P. J., STORCKMAN, J., and HOLMAN, Alt. J., concur.

SEILER, J., not sitting.

---

1. Instruction A, as read to the jury, did not conclude with the qualifying proviso, "provided a very careful person would so proceed under the same or similar circumstances." See the bracketed proviso at the end of MAI No. 14.04, which must be added "where there is evidence that the party entitled to the right of way failed to use such care."