Elizabeth LOPEZ and Penny Jones,
Respondents/Cross–Appellants,

v.

THREE RIVERS ELECTRIC CO-
OPERATIVE, INC., Appel-
lant/Cross–Respondent.

No. SC 82244.

Supreme Court of Missouri,
En Banc.

Aug. 29, 2000.

Ann E. Buckley, James J. Virtel, St. Louis, David P. Madden, Fisher, Patterson, Sayler & Smith, LLP, Overland Park, for Appellant/Cross-Respondent.

Grant L. Davis, Thomas C. Jones, Timothy L. Brake, Kansas City, Robert F. Ritter, Patrick J. Hagerty, Jeffrey J. Lowe, St. Louis, for Respondents/Cross-Appellants.

ANN K. COVINGTON, Judge.

A helicopter crashed after flying into unmarked power lines over the Osage River, killing all four occupants. This case concerns the wrongful death lawsuits brought on behalf of two of the decedents, George Lopez and Kenney Jones. One action is based upon the death of George Lopez, brought by his widow, Elizabeth Lopez, on behalf of herself, the couple's son, and George's parents. The second action is based upon the death of Kenney Jones, brought by his widow, Penny Jones, on behalf of herself and the couple's two daughters. A jury awarded compensatory damages and additional damages for aggravating circumstances in favor of the survivors of the decedents and against the owner of the power lines. The Missouri Court of Appeals, Eastern District, transferred the appeal to this Court because the appeal involves, among other issues, the validity of a state statute, section 537.675(2), RSMo 1994. The judgment is reversed and the cause remanded.

On July 29, 1994, four members of a United States Army Reserve unit departed on a flight training mission in a CH–47 Chinook helicopter. The crew included flight engineer George Lopez and pilot Kenney Jones. Kenney Jones had command and control responsibilities for the

aircraft. George Lopez monitored various aircraft systems and helped clear the aircraft on turns, but had no direct control of the aircraft. Two days later, witnesses reported seeing the helicopter in flight over the middle of the Osage River at an altitude of approximately 100 feet. At approximately 10:15 a.m., the helicopter came into contact with power lines owned by Three Rivers Electric Cooperative (Three Rivers). The helicopter crashed, killing all four crew members. None of the witnesses observed the helicopter take any evasive action prior to its collision with the power lines. Although the lines were energized and carried 7,200 volts of electricity, it is undisputed that electrical voltage was not a cause of the crash or the deaths.

The power lines at the accident site crossed a 939–foot span over the Osage River. They were suspended at an angle across the river between two "H" structures. Trees and other vegetation obstructed the view of the supporting structures. The power lines were three-eighths of an inch in diameter. The lines had neither marking devices nor other warnings that might have aided pilots in detecting them. Since their installation in 1975, the lines had turned greenish brown in color, and they blended with the color of the background landscape.

The power lines were not considered an obstruction to air navigation so as to require marking under Federal Aviation Administration (FAA) regulations because they were fewer than 200 feet above ground level and were not within close proximity to a public airport. 14 C.F.R. section 77.23 (2000). FAA regulations prohibit fixed-wing aircraft from flying below 500 feet in non-congested areas. *Id.* section 91.119(b). There is no fixed minimum, however, for helicopters, which must fly only "without hazard to persons or property on the surface." *Id.* section 91.119(d).

Lopez and Jones brought suit against Three Rivers on the theory that Three Rivers was negligent in failing to warn pilots of the potential danger of flying into power lines that spanned across a location on the Osage River. After a two-week trial, the jury found Three Rivers negligent as to both Lopez and Jones. The jury awarded both Lopez and Jones $2,500,000 in compensatory damages and $500,000 in punitive damages. The jury also found that the pilot and flight engineer were comparatively negligent. In the action for the wrongful death of George Lopez, the jury assessed ninety percent fault to Three Rivers and ten percent to George Lopez. In the action for the wrongful death of Kenney Jones, the jury assessed eighty percent fault to Three Rivers and twenty percent to Kenney Jones. The trial court entered judgment accordingly, awarding Elizabeth Lopez a total of $2,750,000 and Penny Jones a total of $2,500,000. The trial court also ordered Three Rivers to pay prejudgment interest on the compensatory damage awards. Three Rivers appealed.

Three Rivers contends that it owed no duty to Lopez and Jones because the accident that occurred was not foreseeable. Specifically, Three Rivers claims that it did not owe any duty to Lopez and Jones because Three Rivers could not foresee that the power lines would cause injury to pilots.

In any action for negligence, the plaintiff must establish that the defendant had a duty to protect the plaintiff from injury, the defendant failed to perform that duty, and the defendant's failure proximately caused injury to the plaintiff. *Krause v. U.S. Truck Co., Inc.,* 787 S.W.2d 708, 710 (Mo. banc 1990). Concepts of duty and foreseeability have not .always been clearly stated in Missouri law. Whether a duty exists is purely a question of law. *Aaron v. Havens,* 758 S.W.2d 446, 447 (Mo. banc 1988); *see* W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS section 37, at 236 & n. 7 (5th

ed.1984).[1] Under the principles of general negligence law, whether a duty exists in a given situation depends upon whether a risk was foreseeable. In the absence of a particular relationship recognized by law to create a duty, the concept of foreseeability is paramount in determining whether a duty exists. *Hoover's Dairy, Inc. v. Mid–America Dairymen,* 700 S.W.2d 426, 431–32 (Mo. banc 1985). This Court has recognized, however, that the concept of "foreseeability" can have relevance in more than one context. *Krause,* 787 S.W.2d at 710. Foreseeability for purposes of establishing whether a defendant's conduct created a duty to a plaintiff depends on whether the defendant should have foreseen a risk in a given set of circumstances. *Zuber v. Clarkson Const. Co.,* 363 Mo. 352, 251 S.W.2d 52, 55 (banc 1952). In this setting, foreseeability is forward-looking. *See Taylor v. Dale–Freeman Corp.,* 389 S.W.2d 57, 60–61 (Mo. 1965); *Poelstra v. Basin Elec. Power Co-op.,* 545 N.W.2d 823, 827 (S.D.1996). In the context of determining proximate causation, however, foreseeability refers to whether a defendant could have anticipated a particular chain of events that resulted in injury or the scope of the risk that the defendant should have foreseen. *See Callahan v. Cardinal Glennon Hosp.,* 863 S.W.2d 852, 865–66 (Mo. banc 1993). This type of foreseeability relies upon hindsight to determine whether the precise manner of a particular injury was a natural and probable consequence of a negligent act. *See Poelstra,* 545 N.W.2d at 827. When it is determined that a duty exists, the concept of foreseeability is significant in evaluating the reasonableness of a particular risk in light of all the circumstances. *See Davis v. Cessna Aircraft Corp.,* 182 Ariz. 26, 893 P.2d 26, 31, 33 (App.1994).

For purposes of determining whether a duty exists, this Court has defined foreseeability as the presence of some probability or likelihood of harm sufficiently serious that ordinary persons would take precautions to avoid it. *Zuber,* 251 S.W.2d at 55. The existence of a mere possibility is insufficient. *Id.* "The test is not the balance of probabilities, but of the existence of some probability of sufficient moment to induce the reasonable mind to take the precautions which would avoid it." *Id.*

The evidence in this case supports a finding that Three Rivers should have foreseen that there existed some probability of sufficient moment that an injury could occur. At trial, Lopez and Jones presented evidence that Three Rivers was aware of a similar incident that had occurred in 1975, resulting in three fatalities. A fixed-wing aircraft that had been tracking the movement of bald eagles along the Osage River struck Three Rivers' power lines at the same location as the accident in this case. *See Allnutt v. United States,* 498 F.Supp. 832 (W.D.Mo.1980).[2] Although Three Rivers was sued as a result of the accident, the court later dismissed Three Rivers from the lawsuit. Three Rivers was also aware of a near miss at the same location in 1974. Three Rivers obtained notice of the 1974 near miss in the form of a copy of deposition testimony regarding the incident.

Although an attorney had advised Three Rivers that it was not required by statute or regulation to mark the wires at the accident site, the former president and chief executive officer of Three Rivers' insurance company, Michael Harp, testified in the present case that he and his employees informed Three Rivers, at least gener-

---

**1.** *Pierce v. Platte–Clay Elec. Co-op., Inc.,* 769 S.W.2d 769, 776 (Mo. banc 1989), should not be read to support the proposition that determining whether a duty exists is for the jury. In some cases, the jury may be charged with determining whether facts exist that may give rise to a finding of forseeability and, in turn,

duty. Once these facts are found to exist, it is for the court to determine as a matter of law whether the facts give rise to a duty.

**2.** Three Rivers' contention that evidence of the 1975 accident should not have been admitted is addressed *infra.*

ally, about the dangers of having unmarked power lines over the Osage River.[3] Three Rivers had placed orange marker balls in 1997 on at least one set of its power lines on the Osage River down river from the accident site.

Mr. Harp also testified that he discussed with Three Rivers the presence of military and civilian aircraft flying at low altitudes over the Osage River. Other witnesses testified that they had seen aircraft nearly miss, and even fly under, the power lines. Three Rivers, therefore, knew, or should have been aware, in the exercise of reasonable diligence, that aircraft fly at low levels in the vicinity of their power lines over the Osage River. *See Hoover's Dairy,* 700 S.W.2d at 431–32 (quoting 57 AM.JUR.2D *Negligence* section 54 (1971)).

■ Dr. Michael Hynes, plaintiffs' expert witness, stated that the "norm" in the industry after an accident occurs is either to mark the line or to request an aeronautical study from the FAA regarding whether the power lines should have been marked. Although pilots are accustomed to seeing wires located between poles, the wires in this case were over 900 feet long between the supporting structures. The wires were also difficult to see because of their relatively small diameter and because the wires had become greenish brown in color due to oxidization. There was additional testimony that the supporting structures, located on the banks of the river, were not visible from a distance of one mile in either direction and were obstructed. Together, the foregoing evidence amply supports the conclusion that Three Rivers knew or should have known of a risk of harm to pilots sufficiently probable to create a duty. *See Zuber,* 251 S.W.2d at 56. Whether Three Rivers breached that duty with respect to the particular accident in this case is a question of fact

for the jury. PROSSER AND KEETON ON THE LAW OF TORTS section 37, at 237.

Three Rivers does not dispute that, if a duty exists, the nature of the duty is defined by the plaintiffs' instruction patterned after MAI 22.07, which addresses the duty owed by a landowner to a licensee. Three Rivers contends, however, in another point on appeal, that the trial court erred by submitting instructions numbered 8 and 14, because the instructions required Three Rivers to exercise the "highest degree of care." Three Rivers argues that the proper standard of care should have been "ordinary care."

Instructions numbered 8 and 14 read as follows:

On the claim of plaintiff [Elizabeth Lopez/Penny Jones] for compensatory damages for wrongful death against [Three Rivers], you must assess a percentage of fault to [Three Rivers] if you believe:

First, [Three Rivers] maintained power lines across the Osage River without marker balls thereon to warn pilots of their existence and as a result, the power lines were not reasonably safe for persons flying in aircraft over the Osage River; and

Second, [Three Rivers] knew of this condition and knew that such condition was not reasonably safe; and

Third, [Three Rivers] knew or had information from which [Three Rivers], in the exercise of the *highest degree of care,* should have known that persons such as the pilots would not discover such condition or realize the risk of harm; and

Fourth, [Three Rivers] failed to use the *highest degree of care* to adequately warn of it; and

3. In its point relied on, Three Rivers suggests that they had no duty, in part because "no statute or regulation required placement of marker balls on these wires." Three Rivers

did not, however, raise this issue in the argument portion of its brief, focusing instead upon the foreseeability of the accident.

Fifth, such failure directly caused or directly contributed to cause [George Lopez's/Kenney Jones'] death.

The phrase *"highest degree of care"* as used in this instruction means that degree of care that a very careful person would use under the same or similar circumstance.

(emphasis added). Three Rivers timely and specifically objected to the use of the highest degree of care standard.

■■■■ The appropriate standard of care is a question of law. *Harris v. Niehaus,* 857 S.W.2d 222, 226 (Mo. banc 1993). Ordinary care is the correct standard of care in this case. The circumstances of the accident did not involve the inherently dangerous properties of electricity. Where, as here, electricity is not the agent of injury, the proper standard of care is ordinary care. *Pierce v. Platte–Clay Elec. Co-op., Inc.,* 769 S.W.2d 769, 771 n. 1 (Mo. banc 1989). As a matter of law, therefore, Three Rivers' objection should have been sustained.

■■■ Because it was error to submit the highest degree of care standard, the question then is whether Three Rivers was prejudiced by the submission of Instructions Number 8 and Number 14. Prejudice is ordinarily presumed when a jury instruction imposes upon a party a standard of care greater than that required by law.[4] *Root v. Mudd,* 981 S.W.2d 651, 656 (Mo.App.1998). The presumption is rarely rebutted. This Court has consistently held that an instruction that imposes upon a party a standard of care higher than that required by law is prejudicial, requiring a

new trial. *Schlegel v. Knoll,* 427 S.W.2d 480, 485 (Mo.1968); *Toburen v. Carter,* 273 S.W.2d 161, 165 (Mo.1954); *Oesterreicher v. Grupp,* 119 S.W.2d 307, 308 (Mo.1938); *Borgstede v. Waldbauer,* 337 Mo. 1205, 88 S.W.2d 373, 376 (banc 1935).

■■■ Three Rivers was prejudiced by the submission of Instructions Number 8 and Number 14. The instructions confined Three Rivers to an argument that, in the exercise of the highest degree of care, a very careful person would not have placed warnings on the power lines into which Lopez and Jones flew. If properly instructed, the jury would have been informed that the phrase "ordinary care" means "that degree of care than an ordinarily careful person would use under same or similar circumstances." MAI 11.05. Three Rivers should have been able to argue to the jury, under the correct instruction, that an ordinarily careful person would not have placed warnings on the power lines. The instructions, therefore, deprived the jury of the ability to find that an ordinarily careful person, considering all of the circumstances, would not have placed warnings on the power lines. Put another way, under the facts of this case, the jury might have determined that Three Rivers was not liable because it did exercise ordinary care. The submission of the erroneous instructions in this case, therefore, imposed an undue burden on Three Rivers and was prejudicially erroneous. *See Schneider v. Bi–State Development Agency,* 447 S.W.2d 788, 791 (Mo. App.1969); *cf. Stewart v. St. Louis Pub. Serv. Co.,* 75 S.W.2d 634, 635 (Mo.App. 1934).[5]

---

4. *Fowler v. Park Corp.,* 673 S.W.2d 749 (Mo. banc 1984), cited by Lopez and Jones, is distinguishable. In *Fowler,* because the appellant failed to preserve its instructional error challenge, this Court declined to apply the presumption of prejudice. *Id.* at 757. *Fowler,* therefore, merely eliminated the opportunity for sandbagging. Specifically, *Fowler* sought to prevent a party faced with an erroneous instruction from waiting without objecting so that they could request a new trial only in the event the jury returned an unfa-

vorable verdict. *See Root,* 981 S.W.2d at 656. Three Rivers, unlike Park Corporation, timely and specifically objected.

5. Although not necessary to the holding, this Court notes that the jury's finding of comparative fault further supports Three Rivers' contention that the instructional error is prejudicial. The comparative fault instruction held Kenney Jones to the "ordinary care" standard. Even though Three Rivers was held to the higher "highest degree of care" standard,

Lopez and Jones contend that the jury could have believed that the appropriate standard of care was ordinary care because another instruction, Number 6, defined the terms "negligent" or "negligence" as "that degree of care that an ordinarily careful person would use under the same or similar circumstances." The jury, however, could not have applied that definition to the instructions at issue, Number 8 and Number 14, because the instructions did not contain the terms "negligent" or "negligence." Instead, the instructions at issue contained the term "the highest degree of care." The argument, therefore, is without merit.

Lopez and Jones also assert that Three Rivers was not prejudiced because Lopez and Jones did not overly emphasize the highest degree of care standard during closing argument. Even if references to the incorrect standard of care were not numerous, the assertion does not overcome the presumption of prejudice. The jury was given an instruction that misstated the law, and Lopez and Jones invoked the erroneous standard in closing argument. The case must be reversed and remanded for a new trial because of the instructional error.

 Some other issues raised by the parties are likely to recur on retrial. Three Rivers contends that its failure to place warnings on the power lines did not cause the accident. Three Rivers asserts that the evidence did not prove that the decedents would have heeded the warnings and taken appropriate action to avoid the accident. There is a presumption in Missouri, however, that a warning will be heeded. *Arnold v. Ingersoll–Rand Co.*, 834 S.W.2d 192, 194 (Mo. banc 1992). Three Rivers fails to rebut the presumption when it asserts merely that because the decedents violated military regulations

and standard operating procedures, they would have *a fortiori* ignored warning markers.

 Three Rivers also contends that the trial court erred in admitting evidence of the prior 1975 accident involving an airplane that flew into the power lines at the location of the accident in this case. Three Rivers asserts that the 1975 accident was too remote in time and that the circumstances in the prior accident were not sufficiently similar to the accident in this case. The decision of the trial court to allow evidence of a prior accident is reviewed for an abuse of discretion. *Hess v. Chicago, Rock Island & Pac. R.R.*, 479 S.W.2d 425, 431 (Mo.1972). Whether evidence is too remote to be material is also a matter of trial court discretion.

 The trial court did not abuse its discretion by finding that the 1975 accident is relevant to the determination of whether Three Rivers was negligent in the instant case. Under certain circumstances, evidence of prior accidents is admissible. *Id.* A trial court may admit evidence of prior accidents if the evidence is of an accident of like character that occurred under substantially the same circumstances and resulted from the same cause. *Id.* Both the 1975 accident and the accident in this case involved aircraft flying at low altitudes over the Osage River. In both, the aircraft flew into unmarked power lines, causing a crash and killing all persons on board. The lack of markings or warnings allegedly contributed to both accidents. The evidence in both cases indicated that, despite clear weather, the pilots never saw the relatively thin power lines. As for remoteness, a prior accident farther in time from the accident at issue tends to have less relevance than one close

---

the jury did not allocate one hundred percent fault to Three Rivers. With respect to Kenney Jones, the jury allocated eighty percent of the fault to Three Rivers and twenty percent to Kenney Jones. Had Three Rivers been held to the same "ordinary care" standard that

was applied to Kenney Jones, as the law requires, the jury could very reasonably have attributed an even greater percentage of fault to Kenney Jones. *See Root,* 981 S.W.2d at 656.

in time. Remoteness is, however, but one factor. A prior accident that meets the requirements of similarity, even though remote, may be highly material. Remoteness of time goes to the weight of the evidence in most circumstances, not to its admissibility. *See State v. Bernard*, 849 S.W.2d 10, 19–20 (Mo. banc 1993). In the present case, where the evidence of the earlier accident was of sufficient like character, occurred under substantially the same circumstances, and resulted from the same cause, the trial court did not abuse its discretion in admitting evidence of the 1975 accident.

■■ Three Rivers contends that the trial court erred in submitting instructions to the jury regarding the award of damages for aggravating circumstances because the evidence was not sufficient to support the submission of such instructions.

■■ To support a claim for damages for aggravating circumstances, there must be clear and convincing evidence in support of the claim. *Rodriguez v. Suzuki Motor Corp.*, 936 S.W.2d 104, 110 (Mo. banc 1996). Specifically, evidence must show that the defendant either knew or had reason to know that there was a high degree of probability that the defendant's conduct would result in injury. *Hoover's Dairy*, 700 S.W.2d at 436. The defendant's conduct must be tantamount to intentional wrongdoing where the natural and probable consequence of the conduct is injury. *Id.* at 435. With such a showing, a plaintiff can recover for aggravating circumstances based upon the defendant's complete indifference to or conscious disregard for the safety of others. *Alack v. Vic Tanny Int'l*, 923 S.W.2d 330, 338–39 (Mo. banc 1996).

■■ In the context of a negligence case, the "high degree of probability of injury" and "complete indifference or conscious disregard" standards are somewhat ambiguous. From the negligence cases in which exemplary damages have been disallowed, however, factors that assist in identifying when submission of such damages is permissible can be distilled. Weighing against submission of punitive or aggravating circumstances damages are circumstances in which: prior similar occurrences known to the defendant have been infrequent; the injurious event was unlikely to have occurred absent negligence on the part of someone other than the defendant; and, the defendant did not knowingly violate a statute, regulation, or clear industry standard designed to prevent the type of injury that occurred. *Drabik v. Stanley–Bostitch, Inc.*, 997 F.2d 496, 510–11 (8th Cir.1993); *Sutherland v. Elpower Corp.*, 923 F.2d 1285, 1290–91 (8th Cir.1991); *Menaugh v. Resler Optometry, Inc.*, 799 S.W.2d 71, 73–74 (Mo. banc 1990); *M.C. v. Yeargin*, 11 S.W.3d 604, 614–15 (Mo.App. 1999).

The facts in the case presented do not rise to the level required for submitting an instruction based upon aggravating circumstances. In *Hoover's Dairy*, this Court noted a classic example of a situation in which a defendant knew or should have known that there was a high degree of probability that the defendant's conduct would result in injury – an individual firing a rifle into a moving passenger train. 700 S.W.2d at 435–36. Three Rivers' conduct was not nearly so egregious. Three Rivers obtained the advice of counsel that indicated no regulation or statute required any markings. Furthermore, Three Rivers had knowledge of only one near accident in 1974 and one accident in 1975. Three Rivers' investigation of the 1975 accident determined that accident involved negligence by the pilot, a complete defense at the time. There was no evidence that either the accident here or the accident in 1975 involved the violation of a statute or regulation designed to prevent the injury that occurred. In addition, there has been no violation of an industry standard warranting imposition of punitive damages in this case. The evidence of an industry standard offered by Lopez and Jones is

neither clear enough nor specific enough to support the claim for punitive damages; the questionnaire they advance makes no mention of the objective quantity of air traffic in the area, height, length, or thickness of wire, width of stream, or other relevant data. The questionnaire does not suggest the existence of an industry standard the violation of which makes punitive damages appropriate in this case. In sum, the evidence did not show that Three Rivers knowingly violated a duty or that it was completely indifferent to or consciously disregarded the safety of others. The evidence, while supporting a finding of a risk of harm, did not clearly and convincingly support an instruction for aggravating circumstances. *See Kansas City v. Keene Corp.*, 855 S.W.2d 360, 375–76 (Mo. banc 1993).

Because the evidence in this case does not support the giving of an instruction for punitive damages, this Court does not reach Three Rivers' contentions that the aggravating circumstances instruction did not accurately state the law or that the award violated various constitutional provisions. Similarly, we do not reach the cross-appeal claim brought by Lopez and Jones that the trial court should have awarded prejudgment interest on their awards for aggravating circumstances.

Three Rivers and Lopez assert additional points that could occur on retrial but were not preserved. Three Rivers contends that the trial court erred in awarding prejudgment interest to Jones pursuant to section 408.040.2, RSMo 1994. Three Rivers asserts that section 408.040.2 precludes prejudgment interest because the amount of the compensatory damages awarded to Jones was equal to, not greater than, the amount of her demand for settlement. Because, on retrial, the possibility exists that the jury may, upon a finding of negligence, award damages in an amount different from the damages in this case, this Court declines to reach this issue.

Three Rivers contends that the trial court erred by not admitting a United States Army report concerning the accident. During a pre-trial conference, Lopez and Jones argued that the report constituted an accident investigation report that is inadmissible under federal law. *See* 10 U.S.C. section 2254. Three Rivers contends, however, that the federal statute is not applicable to this report and that the report is admissible under an exception to the hearsay rule. *See* section 490.220, RSMo 1994.

■ Three Rivers did not properly preserve this issue for appeal. At trial, Three Rivers attempted to question a witness, Art Negrette, regarding his review of the army report. The trial court sustained Lopez and Jones' objections to Negrette's references to the army report. At no time, however, did Three Rivers attempt to introduce the report itself into evidence. Nor did Three Rivers make an offer of proof regarding Negrette's testimony referring to the report. The army report itself is not in the record. Three Rivers, therefore, did not preserve for appeal any error regarding the admissibility of the army report. *See Wilkerson v. Prelutsky*, 943 S.W.2d 643, 646–47 (Mo. banc 1997).

■ On cross-appeal, Lopez alleges that the trial court erred in instructing the jury on comparative fault against the decedent George Lopez. Lopez failed to preserve her claims of instructional error by failing to object at the instruction conference. *See Blackstock v. Kohn*, 994 S.W.2d 947, 952–53 (Mo. banc 1999).

Lopez contends, in the alternative, that the trial court erred in denying her motion for a judgment notwithstanding the verdict on the issue of comparative negligence. In view of the remand for a new trial, it is not necessary to decide this issue.

In conclusion, Three Rivers had a duty to aircraft that may have collided with its power lines across the Osage River at the site of the accident in this case. The instructions submitted to the jury, however, were erroneous because they required the jury to apply a standard of care higher

than that required by law. The case is reversed and the cause remanded for a new trial.

LIMBAUGH, HOLSTEIN and BENTON, JJ., concur.

PRICE, C.J., dissents in separate opinion filed; WHITE and WOLFF, JJ., concur in opinion of PRICE, C.J.

WILLIAM RAY PRICE, Jr., Chief Justice, dissenting.

I dissent from the majority opinion for the following reasons.

### I.

Missouri case law has always demanded the highest degree of care regarding dangerous instrumentalities because of the great risk of injury or death. *See e.g.,* MAI 11.01 (5th ed); *Mrad v. Missouri Edison Co.,* 649 S.W.2d 936 (Mo.App.1983) (insulation and isolation of power lines); *Wagstaff v. City of Maplewood,* 615 S.W.2d 608 (Mo.App.1981) (firearms); *Lottes v. Pessina,* 174 S.W.2d 893 (Mo.App.1943) (explosives). The majority cursorily states that this standard of care is inapplicable because the injuries in this accident did not result from the electricity carried by the lines, but instead merely from colliding with the line itself. They rely upon a footnote from *Pierce v. Platte–Clay Elec. Co-op., Inc.,* 769 S.W.2d 769 (Mo. banc1989), that distinguishes energized from non-energized lines.

*Pierce,* however, was a case that arose when a farmer was injured by a ground-level, non-energized "guy wire" used to stabilize an utility pole. In such a circumstance the non-energized wire did not have the same fatally dangerous potential as an electrical wire within reach from someone on the ground. Because the "guy wire" would not be expected to electrocute a person who might come into contact with it, the wire was held not to pose the special type of danger that would justify the higher standard of care.

The great danger of the transmission wires, here, had nothing to do with whether they were energized or not. Instead, they were uniquely dangerous because of their ability to cause almost certain death to the passengers of any aircraft that might strike them. This danger was compounded because the electrical wires were practically invisible to approaching aircraft, constituting a deadly trap. Three Rivers had knowledge of both the potential of aircraft to fly into these wires and the great danger of death to any such aircraft's occupants from the 1975 accident that resulted in three fatalities.

Two Pennsylvania cases, *Yoffee v. Pennsylvania Power & Light Co.,* 385 Pa. 520, 123 A.2d 636 (1956), and *Bailey v. Pennsylvania Electric Co.,* 409 Pa.Super. 374, 598 A.2d 41 (1991), relied upon by plaintiffs, but not discussed by the majority, are directly on point. Both involved air strikes to power lines as opposed to contact with lines at ground level. The trial court in Baily succinctly described Yoffe's distinction between air and ground wires in this way:

> The *Yoffee* court, however, placed the highest degree of care standard upon the utility where there was an air strike, not an electrocution, because air strikes, like electrocutions carry a high probability of death or serious injury.

*Bailey,* 598 A.2d at 47.

Under traditional analysis of the law of dangerous instrumentalities, I would hold that the highest degree of care is applicable where, as here, *a prior fatal air strike occurred at the same location* alerting the utility to the life threatening potential of its power lines to aircraft because of their particular location, construction, and lack of warning.

### II.

Even conceding for purposes of argument that it was error to give the "highest degree of care" instruction, I would not reverse the verdict for actual damages because I do not believe that prejudice re-

sulted in the unique circumstances of this case. I agree with the majority that normally when a jury is instructed as to a higher degree of care than required by law, after specific and timely objection, prejudice is presumed and might be found, *Root by Root v. Mudd*, 981 S.W.2d 651, 656 (Mo.App.1998). Whether prejudice actually exists, however, is not to be taken for granted, but has to be determined by the court. *Fowler v. Park Corp.*, 673 S.W.2d 749, 755 (Mo. banc 1984). This must be done by carefully considering the actual language of the instructions as used, opposed to the language of the instructions as they should have been given, to the evidence received in the case.

In this case the jury was instructed to determine whether Three Rivers failed to use the highest degree of care. The highest degree of care was defined as "that degree of care that a very careful person would have used under the same or similar circumstances." MAI 11.01 (5th ed.). Had the jury been instructed to determine whether Three Rivers failed to use ordinary care, ordinary care would have been defined as "that degree of care that an ordinarily careful and prudent person would use under the same or similar circumstances." MAI 11.05 (5th ed.); *Cameron v. Small*, 182 S.W.2d 565, 569 (Mo. 1944).

The exercise of ordinary care as defined by our instructions must be "commensurate with the dangers to be apprehended." Id. Thus, the conduct necessary to fulfill the duty of ordinary care depends upon the circumstances. An ordinarily careful and prudent person is required to use greater care in a more dangerous situation than he or she would use in a less dangerous situation and this may be argued to the jury.

I see little practical difference between the arguments actually made here under the "highest degree of care" instruction from those that would have been made under an "ordinary care" instruction. Had this issue been submitted under the "ordinary care" standard, Plaintiffs still would have been able to argue to the jury that because Three Rivers knew that aircraft flew low over the river at the location of these power lines; and because Three Rivers knew that a pilot could not see the power lines; and because Three Rivers knew that if an aircraft struck the power lines death would most likely result; and, in fact, because Three Rivers knew that this very type of accident had occurred before killing three people; that it was required even as an ordinary person, to be *very careful*. In short, I simply do not believe in the circumstances of this case that it would have made a difference that the jury was asked to determine the issue of Three Rivers' negligence in terms of an "ordinarily careful" person being *very careful*, as opposed to that of a "a very careful person". *Fowler v. Park Corp.*, 673 S.W.2d 749, 755 (Mo. banc 1984), is almost precisely on point in this regard.

If anything, this case merely illustrates the questionable utility of instructions as to different degrees of care in cases involving special danger. Various legal commentators have noted that the trend in modern tort law is to disclaim varying degrees of care in describing the duty element of negligence. *See*, W. Page Keeton et al., *Prosser and Keeton on the Law of Torts*, section 34, at 210–211 (5th ed. 1987) ("The prevailing rule in most situations is that there are no 'degrees' of care or negligence, as a matter of law; there are only amounts of care, as a matter of fact."); 3 Harper, James and Gray, *The Law of Torts*, section 16.13 at 503 (2d ed. 1986) ("For the most part, at least outside of the law of bailments, modern accident law has repudiated the notion that different degrees of care are exacted of people standing in different relationships to an injured party.").

### III.

Finally, I would rule Lopez's cross-appeal concerning the sufficiency of the evidence to support a submission of comparative fault against George Lopez. This

**164**

issue was preserved for review and the majority has seen fit to address a number of other issues "likely to recur on retrial", including the issue of aggravated damages.

Lopez, a flight engineer, was not the pilot in command and had no control of the flight. For all relevant purposes, he was merely a passenger.

We look to automobile tort liability for guidance. *See* Section 305.040, RSMo 1994 (the liability of an aircraft owner "shall be determined by the rules of law applicable to torts on land."). An automobile driver's negligence is not imputed to a passenger, absent a showing of joint enterprise, because the passenger has no control over the automobile's operation. *See e.g., Will v. Gilliam,* 439 S.W.2d 498 (Mo. 1969) (noting that driver's negligence could not be imputed to daughter who was mere passenger with no control over automobile); see generally 57B Am.Jur.2d, Negligence section 1761, at 453–43 (discussing command and control requirement for imputing liability). Here, there is no evidence from which it could be inferred that Lopez had legal or actual ability regarding the flight plan or piloting of the helicopter. Any negligence attributed to pilot Jones cannot be imputed to Lopez. Further, no evidence was submitted that Lopez was negligent as to any individual action that may have caused the accident.

Because it is unlikely any new evidence concerning this issue can be presented at retrial, I would rule that Three Rivers did not make a submissible case for negligence against Lopez.